IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUAN LIZCANO, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:16-cv-01008-B-BN |
| | § | |
| BOBBY LUMPKIN, | § | |
| Director, Texas Department | § | |
| of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**RESPONDENT LUMPKIN'S ANSWER
WITH BRIEF IN SUPPORT**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

ERICH DRYDEN
Assistant Attorney General
Criminal Appeals Division
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
*erich.dryden@oag.texas.gov*

*Attorneys for Respondent*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................iii

INTRODUCTION ....................................................................... 1

LIZCANO'S ALLEGATIONS ........................................................ 2

STATEMENT OF THE CASE ....................................................... 3

STATEMENT OF FACTS .......................................................... 4

ANSWER ............................................................................. 6

I.    All But One of Lizcano's Claims Are Time-Barred Under 28
      U.S.C. § 2244(d)............................................................ 6

      A.    Lizcano is not entitled to equitable tolling under Supreme
            Court and Fifth Circuit precedent.................................. 11

      B.    The time-barred claims do not relate back to Lizcano's
            original petition. ................................................... 14

II.   All But One of Lizcano's Claims Are Procedurally Defaulted........ 20

III.  Lizcano's Claims of Ineffective Assistance of State Habeas
      Counsel Are Not Cognizable. ........................................... 26

IV.   The State Court's Denial of Lizcano's Claim That Trial
      Counsel Were Ineffective for Failing to Pursue a Competency
      Hearing Is Not Unreasonable. .......................................... 27

      A.    Standard of review .................................................. 28

      B.    The state court findings are not unreasonable................... 31

      C.    The state court reasonably denied Lizcano's
            ineffectiveness claim. ............................................. 38

            1.    The state court's finding that counsel were not
                  deficient is reasonable given the record before the
                  court, and Lizcano fails to demonstrate otherwise. ....... 38

i

      a.    **Counsel did not want to give the State an advantage by prematurely turning over their evidence.** ................... 39

      b.    **Trial counsel's characterization of Dr. Martinez's opinion and their belief that a competency trial would not succeed is supported by the hearing testimony.** ................................................................. 43

      c.    **Lizcano's additional arguments fail to show that the state court's decision is unreasonable.** ............................... 48

    2.    **Lizcano fails to show that the state court's determination that he was not prejudiced by counsel's decision to withdraw the competency motion is unreasonable.** ................................................................. 53

**CONCLUSION** ....................................................................... 58

**CERTIFICATE OF SERVICE** ................................................ 59

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Haeberlin*, 404 F. App'x 11 (6th Cir. 2010)................................................. 57

*Adams v. Stephens*, No. 3:14-CV-1276-D,
   2014 WL 3778161 (N.D. Tex. July 31, 2014)..................................................... 8, 9

*Adams v. Thaler*, 421 F. App'x 322 (5th Cir. 2011) .................................................. 25

*Aguilar v. Dretke*, 428 F.3d 526 (5th Cir. 2005) ...................................................... 21

*Alexander v. Cockrell*, 294 F.3d 626 (5th Cir. 2002)................................................ 12

*Alexander v. Johnson*, 211 F.3d 895 (5th Cir. 2000) .............................................. 58

*Arthur v. Thomas*, 739 F.3d 611 (11th Cir. 2014) ..................................................... 9

*Atkins v. Virginia*, 536 U.S. 304 (2002) ...................................................... 1, 6, 49, 57

*Balentine v. Thaler*, 626 F.3d 842 (5th Cir. 2010) ................................................... 22

*Batson v. Kentucky*, 476 U.S. 79 (1985) ............................................................. Passim

*Beazley v. Johnson*, 242 F.3d 248 (5th Cir. 2001).................................................... 25

*Busby v. Dretke,* 359 F.3d 708 (5th Cir. 2004)......................................................... 20

*Cathcart v. Davis*, No. 3:19-CV-177-C-BH, 2019 WL 1318364
   (N.D. Tex. Mar. 8, 2019), *report and recommendation adopted*,
   2019 WL 1316031 (N.D. Tex. Mar. 22, 2019) ......................................................... 9

*Clark v. Davis*, 850 F.3d 770 (5th Cir. 2017) ......................................................... 9, 10

*Colburn v. Cockrell*, 37 F. App'x 90,
   2002 WL 1021891 (5th Cir. 2002).......................................................................... 50

*Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999) .................................................. 11

*Coleman v. Thompson*, 501 U.S. 722 (1991) ........................................... 13, 22, 23, 25

*Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002) ..................................................... 13

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ................................................ 28, 31, 48, 49

*Davila v. Davis*, 137 S. Ct. 2058 (2016) ...................................................... 23, 24, 26

*Davis v. Johnson*, 158 F.3d 806 (5th Cir. 1999) ........................................... 11

*Day v. Quarterman*, 566 F.3d 527 (5th Cir. 2009) ....................................... 55

*Dorsey v. Quarterman*, 494 F.3d 527 (5th Cir. 2007) ................................... 21

*Dowthitt v. Johnson*, 230 F.3d 733 (5th Cir. 2000) ...................................... 44

*Duncan v. Walker*, 533 U.S. 167 (2001) ........................................................ 8

*Edwards v. Carpenter*, 529 U.S. 446 (2000) ................................................ 24

*Elizalde v. Dretke*, 362 F.3d 323 (5th Cir. 2004) ......................................... 25

*Ex parte Gardner,* 959 S.W.2d 189 (Tex. Crim. App. 1998) ........................ 21

*Ex parte Jimenez*, 364 S.W.3d 866 (Tex. Crim. App. 2012) ........................ 21

*Ex parte LaHood*, 401 S.W.3d 45 (Tex. Crim. App. 2013) ........................... 48

*Ex parte Rojas,* 981 S.W.2d 690 (Tex. Crim. App. 1998) ............................. 21

*Fearance v. Scott*, 56 F.3d 633 (5th Cir. 1995) ............................................. 22

*Federal Deposit Ins. Corp. v. Conner*, 20 F.3d 1376 (5th Cir. 1994) ........... 15

*Fierro v. Cockrell*, 294 F.3d 674 (5th Cir. 2002) ............................................ 7

*Figueredo-Quintero v. McCain*, 766 F. App'x 93 (5th Cir. 2019) ................ 16

*Finley v. Johnson*, 243 F.3d 215 (5th Cir. 2001) ........................................... 20

*Fisher v. Texas*, 169 F.3d 295 (5th Cir. 1999) ............................................... 20

*Flores v. Quarterman*, 467 F.3d 484 (5th Cir. 2006) .................................... 11

*Garza v. Stephens*, 738 F.3d 669 (5th Cir. 2013) .......................................... 22

*Hardy v. Cross*, 565 U.S. 65 (2011) ............................................................... 28

iv

*Harrington v. Richter*, 562 U.S. 86 (2011) ........................................................... Passim

*Harris v. Reed*, 489 U.S. 255 (1989) ........................................................................... 20

*Hatten v. Quarterman*, 570 F.3d 595 (5th Cir. 2009) .................................................. 24

*Haynes v. Quarterman*, 526 F.3d 189 (5th Cir. 2008) ................................................. 26

*Hinton v. Alabama*, 571 U.S. 263 (2014) .................................................................... 30

*Holland v. Florida*, 560 U.S. 631 (2010) .............................................................. 11, 13

*Hughes v. Johnson*, 191 F.3d 607 (5th Cir. 1999) ....................................................... 25

*Hughes v. Quarterman*, 530 F.3d 336 (5th Cir. 2008) ................................................. 22

*In re Paredes*, 587 F. Appx. 805 (5th Cir. 2014) ..................................................... 9, 10

*In re Sepulvado,* 707 F.3d 550 (5th Cir. 2013) ...................................................... 22, 23

*In re Wilson*, 442 F.3d 872 (5th Cir. 2006) .................................................................. 12

*Knight v. Florida Department of Corrections*, 936 F.3d 1322 (11th Cir. 2019),
    *cert. denied*, 141 S. Ct. 274 (2020) ........................................................................ 48

*Lawrence v. Florida*, 549 U.S. 327 (2007) .............................................................. 7, 13

*Lombardo v. United States*, 860 F.3d 547 (7th Cir. 2017) ............................................. 9

*Lookingbill v. Cockrell*, 293 F.3d 256 (5th Cir. 2002) ................................................. 11

*McCorquodale v. Director, TDCJ-CID*, No. 6:18cv477, 2020 WL 2167620
    (E.D. Tex. Apr. 17, 2020), *report and recommendation adopted*,
    2020 WL 2126380 (E.D. Tex. May 4, 2020) ............................................................. 9

*McGregor v. Louisiana State Univ. Bd. of Supervisors*,
    3 F.3d 850 (5th Cir. 1993) ...................................................................................... 15

*McQuiggin v. Perkins*, 569 U.S. 383 (2013) ............................................................... 11

*Manning v. Epps*, 688 F.3d 177 (5th Cir. 2012) .......................................................... 11

*Martinez v. Ryan*, 566 U.S. 1 (2012) .................................................................. Passim

*Mayle v. Felix*, 545 U.S. 644 (2005) ............................................................................. 14

*Medina v. California*, 505 U.S. 437 (1992) ...................................................... 37, 50, 52

*Milton v. Miller*, 812 F.3d 1252 (10th Cir. 2016) ...................................................... 20

*Moore v. Texas*, 137 S. Ct. 1039 (2017) ............................................................. 1, 4, 49

*Murphy v. Davis*, 732 F. App'x 249 (5th Cir. 2018) ...................................................... 22

*Murray v. Carrier*, 477 U.S. 478 (1986) ............................................................... 23, 25

*Neal v. Puckett*, 286 F.3d 230 (5th Cir. 2002) ............................................................ 29

*Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011) ........................................................ 41, 42

*Pate v. Robinson*, 383 U.S. 375 (1966) ........................................................... Passim

*Phillips v. Donnelly*, 216 F.3d 508 (5th Cir. 2000) ...................................................... 12

*Rashidi v. Am. President Lines*, 96 F.3d 124 (5th Cir. 1996) ............................. 11, 12

*Reed v. Stephens,* 739 F.3d 753 (5th Cir. 2014) ........................................................... 22

*Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003) .......................................................... 7

*Rompilla v. Beard*, 545 U.S. 374 (2005) .................................................................... 44

*Sawyer v. Whitley*, 505 U.S. 333 (1992) ..................................................................... 22

*Shank v. Vannoy*, No. 16-30994,
   2017 WL 6029846 (5th Cir. Oct. 26, 2017) ............................................................. 9

*Smith v. Ryan*, 813 F.3d 1175 (9th Cir. 2016) ............................................................. 57

*Stevens v. Epps,* 618 F.3d 489 (5th Cir. 2010) ............................................................ 26

*Strickland v. Washington*, 466 U.S. 688 (1984) .............................................. Passim

*Trevino v. Thaler*, 569 U.S. 413 (2013) ............................................................ Passim

*United States v. Ciampi*, 419 F.3d 20 (1st Cir. 2005) .................................................. 15

*United States v. Craycraft*, 167 F.3d 451 (8th Cir. 1999) .......................................... 14

vi

*United States v. Gonzales*, 592 F.3d 675 (5th Cir. 2009)............................................ 15

*United States v. Hicks*, 283 F.3d 380 (D.C. Cir. 2002) ............................................... 19

*United States v. Randall & Blake*, 817 F.2d 1188 (5th Cir. 1987)............................ 17

*United States v. Roe*, 913 F.3d 1285 (10th Cir. 2019) ................................................ 18

*Valdez v. Cockrell*, 274 F.3d 941 (5th Cir. 2001) ........................................................ 29

*Wiggins v. Smith,* 539 U.S. 510 (2003) ........................................................................ 52

*(Terry) Williams v. Taylor*, 529 U.S. 362 (2000).................................................. 28, 29

*Woodford v. Visciotti*, 537 U.S. 19 (2002).................................................................... 29

*Yohey v. Collins*, 985 F.2d 222 (5th Cir. 1993) .......................................................... 42

## Constitutional Provisions, Statutes, and Rules

U.S. Const. amend. VI ................................................................................................ 16

Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)................. Passim

28 U.S.C. § 2244.................................................................................... 6, 7, 8, 9

28 U.S.C. § 2254...................................................................................... Passim

Fed. R. Civ. Proc. 15 .................................................................................................. 14

Fed. R. Civ. Proc. 60 .................................................................................................... 9

Tex. Code Crim. Proc. art. 11.071 ............................................................................... 4

Tex. R. Crim. Evid. 705 ....................................................................... 35, 42, 46, 47

**INTRODUCTION**

Petitioner Juan Lizcano was convicted and sentenced to death for the murder of Dallas police officer Brian Jackson.  Lizcano previously filed a petition for writ of habeas corpus in this Court challenging his conviction and sentence pursuant to 28 U.S.C. § 2254.  ECF No. 1.  He then moved to stay and abate these proceedings so that he could return to state court to relitigate his claim that he is intellectually disabled under *Atkins v. Virginia*, 536 U.S. 304 (2002), in light of the Supreme Court's decision in *Moore v. Texas*, 137 S. Ct. 1039 (2017).  ECF No. 34.  This Court granted the motion.  ECF Nos. 45 & 51.  After returning to state court, Lizcano was granted relief on his *Atkins* claim, and the Texas Court of Criminal Appeals (CCA) commuted his sentence to life without parole.  *Ex parte Lizcano*, WR-68,348-03, 2020 WL 5540165, at *1 (Tex. Crim. App. Sept. 16, 2020) (unpublished).

Lizcano then returned to this Court and filed an amended federal petition challenging his conviction for capital murder.  ECF No. 57.  Respondent Lumpkin (the Director) now files this answer and denies all of Lizcano's assertions of fact except those supported by the record or admitted herein.  Further, most of Lizcano's claims are barred by the statute of limitations and are procedurally defaulted because they were not properly raised in state court.  The Director respectfully requests that Lizcano's petition be denied with prejudice and that he be denied a certificate of appealability (COA).

## LIZCANO'S ALLEGATIONS

The Director understands Lizcano to assert the following claims for relief:

1.  His trial counsel were ineffective for failing to pursue competency proceedings at trial.  ECF No. 57 at 6–21.

2.  His due process rights were violated because the trial court failed to sua sponte conduct a competency hearing pursuant to *Pate v. Robinson*, 383 U.S. 375 (1966); appellate counsel was ineffective for failing to raise this issue on appeal; his appellate counsel labored under a conflict of interest; and state habeas counsel was ineffective for failing to raise the ineffective-assistance-of-appellate-counsel (IAAC) claims in his initial habeas application. ECF No. 57 at 24–41.

3.  Trial counsel were ineffective for failing to properly litigate a claim that the State struck a juror for discriminatory reasons in violation of *Batson v. Kentucky*, 476 U.S. 79 (1985), and his state habeas counsel was ineffective for failing to raise trial counsel's ineffectiveness regarding this issue.  ECF No. 57 at 41–56.

4.  The prosecution committed misconduct by making improper arguments during final argument of the guilt-innocence phase, trial counsel were ineffective for failing to object to these comments, and state habeas counsel was ineffective for failing raise as a claim for habeas relief trial counsel's ineffectiveness. ECF No. 57 at 56–63.

5.  His conviction is unconstitutional due to the cumulative effect of trial counsel's inadequate representation and the trial court's denial of his due process rights, and state habeas counsel was ineffective for failing to raise a cumulative-error claim. ECF No. 57 at 63–64.

For the following reasons, all but the first claim are time-barred and procedurally defaulted, and the claims challenging state habeas counsel's effectiveness are not cognizable.  The first claim was denied by the state court on the merits, and this decision is not objectively unreasonable.  Habeas relief should be denied.

2

## STATEMENT OF THE CASE

Lizcano was indicted, convicted, and sentenced to death for the murder of police officer Brian Jackson.  CR 2, 260, 268–72.[1]  The CCA affirmed Lizcano's conviction and sentence on May 5, 2010.  *Lizcano v. State*, No. AP-75,879, 2010 WL 1817772 (Tex. Crim. App. May 5, 2010) (unpublished).  The Supreme Court denied Lizcano's petition for writ of certiorari on January 18, 2011.  *Lizcano v. Texas*, 562 U.S. 1182 (2011).

Lizcano filed a state application for writ of habeas corpus in the trial court on December 23, 2009.  1 SHCR 2, 93.  Following an evidentiary hearing, the trial court entered findings-of-fact recommending that relief be denied.  8 SHCR 2070–161.  The CCA issued an order adopting a majority of the trial court's findings, and based on those findings and its own independent review, denied Lizcano habeas relief on April 15, 2015.  *Ex parte Lizcano,* WR-68,348-03, 2015 WL 2085190 (Tex. Crim. App. Apr. 15, 2015) (unpublished).  The Supreme Court denied Lizcano certiorari review on December 7, 2015.  *Lizcano v. Texas*, 577 U.S. 1029 (2015).

---

[1]     CR" refers to the clerk's record, followed by the page number(s).  "RR" refers to the reporter's record of transcribed trial proceedings, preceded by volume number and followed by page number(s).   "SHCR" refers to the state habeas clerk's record—the transcript of pleadings and documents filed with the court during Lizcano's state habeas proceeding—preceded by volume number and followed by page number(s).  "SHCR2" refers to Lizcano's second state habeas application, followed by page number(s).  "EHRR" refers to the reporter's record of the state habeas evidentiary hearing, preceded by volume number and followed by page number(s).  Volumes 9–12 of the EHRR consist of the exhibits submitted by the parties. In these exhibits, "SX" refers to the State's exhibits, followed by exhibit number(s), and "PX" refers to the petitioner's exhibits, followed by exhibit number(s).

Lizcano then filed a federal habeas petition in this Court on April 13, 2016. ECF No. 1. On September 28, 2016, this Court appointed Lizcano independent counsel. ECF No. 28. On October 6, 2017, this Court stayed and abated these proceedings so that Lizcano could relitigate his intellectual-disability claim in light of the Supreme Court's decision in *Moore v. Texas*. ECF No. 51. Ultimately, the CCA granted Lizcano habeas relief in light of *Moore* and commuted his death sentence to life without parole. *Ex parte Lizcano*, 2020 WL 5540165, at *1. However, after this Court stayed and abated the instant case, Lizcano also filed a subsequent state habeas application raising additional claims for relief. *See* SHCR2. On September 16, 2020, the CCA dismissed this application as an abuse of the writ under Texas Code of Criminal Procedure, Article 11.071, Section 5, without considering the merits. *Ex parte Lizcano*, WR-68,348-04, 2020 WL 5568625, at *1–*2 (Tex. Crim. App. Sept. 16, 2020) (unpublished).

Lizcano then returned to this Court, and on January 5, 2021, he filed the instant federal habeas petition raising claims regarding the guilt-innocence phase of his trial. ECF No. 57.

## STATEMENT OF FACTS

The CCA summarized the facts of the crime as follows:

[Lizcano] and Jose Fernandez, a friend, spent the evening of Saturday, November 13, 2005, at a dance club in Dallas. Fernandez testified at [Lizcano's] trial that they arrived around 10:00 or 11:00 p.m. and consumed three beers each, leaving around 1:00 a.m. on Sunday morning. As [Lizcano] drove them home in his truck, Fernandez overheard [Lizcano] talking on his cell phone to Marta Cruz, his girlfriend. [Lizcano] told Cruz "if she was with another person, he was going to kill her. He's going to kill her and him." [Lizcano] then drove

4

with Fernandez to the apartment [Lizcano] shared with his uncle and brother.  [Lizcano] took his uncle's revolver and continued to Cruz's house.  Fernandez stayed in the truck while [Lizcano] went inside.

Marta Cruz testified that [Lizcano] knocked on her door around 2:00 a.m. on Sunday morning.  After she let him inside, [Lizcano] pointed the revolver at her head.  Then he fired one shot into the ceiling.  Cruz said [Lizcano] told her that "[t]he next shot was for me.  That I was next.  The next one was for me."  [Lizcano] left the house after about ten minutes.  Cruz immediately called 911.

Before the police arrived, Cruz called Fernandez to find out if he knew that [Lizcano] had a gun.  When Fernandez answered, Cruz learned that he was with [Lizcano].  She asked Fernandez to tell [Lizcano] not to come back to her house because the police were looking for him.  But [Lizcano] called Cruz and told her that he "didn't give a damn.  He just didn't care."

Officer Lori Rangel was one of the officers who responded to Cruz's first 911 call.  Officer Rangel testified that after Cruz described the incident with [Lizcano], Officer Rangel searched the surrounding area, but did not find [Lizcano] or his truck.  Following the unsuccessful search, Cruz told Officer Rangel that she did not need anyone to continue waiting with her, so Officer Rangel left the house.

Cruz received another call from [Lizcano] after Officer Rangel left.  [Lizcano] said "that he could see that there was no police.  That I was lying."  A couple of minutes later, [Lizcano] began kicking her side door to gain entry.  Cruz hid in a closet.  She called 911 while [Lizcano] continued trying to kick through the door.  Eventually, police officers arrived at Cruz's house and [Lizcano's] kicking stopped.

Several police officers testified about the events following Cruz's second 911 call.  Officer David Gilmore saw [Lizcano] run from the back yard into an alley behind the house.  Several officers then searched the alley.  A marked police vehicle led officers on foot, and a police helicopter hovered above.  Officers Brad Ellis, Richard Rivas, Francis Crump, and Raymond McClain described scrambling for cover as [Lizcano] fired at least three shots at them from behind a tree in the alley.  [Lizcano] then ran from the alley, toward the front of the house.

While other officers searched the back alley, Officer Brian Jackson took an AR-15 rifle from his police vehicle and moved into a position at the front of the house.  After [Lizcano] ran to the front of the house, officers

heard [Lizcano's] revolver fire one shot, followed by Officer Jackson's rifle three shots.  As the officers converged on the front yard, they found Officer Jackson fatally wounded and [Lizcano] lying on the ground behind a trash can.  His revolver lay empty on the ground two or three feet from his head.  According to Chief Medical Examiner Dr. Jeffrey Barnard, [Lizcano's] shot traveled through Officer Jackson's right arm and then into his heart, killing him within ten to fifteen seconds.

At trial, [Lizcano] did not contest that he had fired the fatal shot. He did, however, challenge the State's theory that he fired first and that he knew Officer Jackson was a police officer.

*Lizcano v. State*, 2010 WL 1817772, at *1–*2.

## ANSWER

## I.   All But One of Lizcano's Claims Are Time-Barred Under 28 U.S.C. § 2244(d).

All of Lizcano's claims, with one exception, are barred under the statute of limitations provision of § 2244(d).  In his original petition, filed on April 13, 2016, Lizcano raised four claims: (1) the prosecution knowingly presented false testimony at the punishment phase, ECF No. 1 at 50–62; (2) he is intellectually disabled under *Atkins* and, thus, his death sentence is unconstitutional, *id.* at 62–79; (3) trial counsel were ineffective for failing to pursue a competency hearing at trial, *id.* at 80–83; and (4) trial counsel were ineffective for failing to investigate and present mitigating evidence at punishment, *id.* at 83–88.  Only the third claim is also presented in the instant amended petition, here as claim one.  *See* p.2, *supra*.  All of the other allegations in this petition are untimely.

Section 2244(d)(1)(A) provides that the one-year limitation period shall run from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1)(A).  In

this case, the CCA affirmed Lizcano's conviction on May 5, 2010. *Lizcano v. State*, 2010 WL 1817772. The Supreme Court denied Lizcano's petition for writ of certiorari on January 18, 2011, *Lizcano v. Texas*, 562 U.S. 1182, and his conviction became final at that time. *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

However, because the statute is tolled during the pendency of state court petitions for habeas corpus relief, 28 U.S.C. § 2244(d)(2), and because Lizcano filed his state habeas application before his conviction became final, the limitations period did not begin to run until April 15, 2015, the date the CCA denied his state habeas application. *Ex parte Lizcano,* 2015 WL 2085190; *see Fierro v. Cockrell*, 294 F.3d 674, 679 (5th Cir. 2002).[2] Therefore, Lizcano was required to present all claims to this Court by April 15, 2016. He did not because only one claim in Lizcano's original timely petition is included in the instant amended petition.

Because Lizcano's federal habeas counsel also participated in his state habeas proceeding,[3] Lizcano eventually moved this Court for "conflict free" counsel to potentially raise claims that could meet the equitable exception of *Martinez v. Ryan*,

---

[2]    Although Lizcano filed a petition for writ of certiorari from the CCA's denial of his state habeas application, this time does not toll the limitations period under § 2244(d)(2) because "[t]he application for state postconviction review is [ ] not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari." *Lawrence v. Florida*, 549 U.S. 327, 332 (2007).

[3]    David Dow and Alma Lagarda were Lizcano's original state habeas attorneys, and they filed his state application. 1 SHCR 2, 95. Debra McComas, who filed Lizcano's original habeas petition in this Court, was substituted as co-counsel for Lizcano in his state habeas proceeding on February 23, 2012, just over three years after Lizcano filed his state habeas application. 3 SHCR 651. Nonetheless, after an ex parte hearing, this Court determined it was in Lizcano's best interests to have independent counsel appointed for purposes of the instant proceedings. ECF Nos. 5, 10, 17, 19, 25 & 28.

566 U.S. 1 (2012), which was applied to Texas cases in *Trevino v. Thaler*, 569 U.S. 413 (2013).  *See* ECF No. 25.  This Court granted the motion and appointed independent counsel on September 28, 2016.  ECF No. 28.  On June 14, 2017, independent counsel filed ex parte documents including a supplemental petition, which "raised ten new claims, five of which were unrelated to [Lizcano's] penalty-phase proceedings and/or his death sentence."  ECF No. 57 at 4; *see also* ECF Nos. 46–50.  On September 21, 2017, this Court issued an order stating that the supplemental petition was filed for purposes of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) on June 14, 2017.  ECF No. 44.  Assuming the allegations in this pleading include those in the instant amended petition, this pleading is still untimely because it was filed fourteen months after the limitations period expired.  And to the extent Lizcano might claim that the limitations period was tolled while his original petition was pending, the Supreme Court has rejected that argument.  *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (holding that the filing of a federal habeas petition does not toll the limitations period "within the meaning of 28 U.S.C. § 2244(d)(2)").

Further, should Lizcano argue that his supposed conflicted representation on federal habeas review and its relevance to *Martinez* and *Trevino* warrants excusal or equitable tolling, that argument fails.  First and foremost, this Court has held that *Martinez* and *Trevino* "relate only to the issue of cause to excuse a procedural default of an ineffective-assistance-of-trial-counsel [(IATC)] claim and, thus, do not apply to the AEDPA's statute of limitations."  *Adams v. Stephens*, No. 3:14-CV-1276-D, 2014

WL 3778161, at *2 (N.D. Tex. July 31, 2014) (order adopting magistrate's recommendation) (unpublished) (citing *Arthur v. Thomas*, 739 F.3d 611, 629 (11th Cir. 2014)); *see also McCorquodale v. Director, TDCJ-CID*, No. 6:18cv477, 2020 WL 2167620, at *4 (E.D. Tex. Apr. 17, 2020) (unpublished), *report and recommendation adopted*, 2020 WL 2126380 (E.D. Tex. May 4, 2020); *Cathcart v. Davis*, No. 3:19-CV-177-C-BH, 2019 WL 1318364, at *3 (N.D. Tex. Mar. 8, 2019) (unpublished), *report and recommendation adopted*, 2019 WL 1316031 (N.D. Tex. Mar. 22, 2019).  And in at least one case, the Fifth Circuit has held the same.  *Shank v. Vannoy*, No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. Oct. 26, 2017) ("*Martinez* does not apply to § 2244(d)'s one-year limitations period.") (unpublished order by Higginson, J.) (citing *Lombardo v. United States*, 860 F.3d 547, 557–58 (7th Cir. 2017) & *Arthur*).  Thus, any potential issues arising from *Martinez* and *Trevino* do not merit equitable tolling.

Second, even if the *Martinez*/*Trevino* and conflicted-representation issue warranted tolling in some cases, here it would not.  In *Clark v. Davis*, the Fifth Circuit addressed a similar issue of untimeliness but in the context of a petitioner's Federal Rule of Civil Procedure 60(b) motion for relief.  850 F.3d 770 (5th Cir. 2017).  There, the petitioner's state and federal habeas counsel were the same, so the petitioner was appointed new federal habeas counsel.  The petitioner argued that the time during which newly appointed counsel prepared the Rule 60(b) motion should be excused.  *Id.* at 782–83.  The Fifth Circuit disagreed stating that the petitioner was on notice of the "conflicted representation" issue the date the Supreme Court rendered its decision in *Trevino*.  *Id.* at 783.  The court held that its conclusion in *In re Paredes*,

587 F. Appx. 805, 824–25 (5th Cir. 2014) (per curiam) (unpublished), "that Paredes had the basis for asserting that his counsel was conflicted as soon as *Trevino* was issued" was "sound." *Clark*, 850 F.3d at 783.

Here, Lizcano was on notice of any conflicted representation when he filed his original federal petition on April 13, 2016, because *Trevino* was decided several years before. Indeed, he was on notice of the issue after the CCA denied his habeas application in 2015, and he should have moved for new federal habeas counsel then. Instead, he did not move for independent counsel until five months *after* he filed his federal petition, and that motion occurred only after this Court inquired whether conflicted representation might be an issue. *See* ECF Nos. 5, 10, 19 & 25. Thus, he cannot assert this matter as grounds for excusing his untimeliness.

Alternatively, even assuming arguendo that Lizcano was not aware, or could not have been aware, of the potential conflict before he filed his original petition, this Court made him aware of the issue in its April 15, 2016, memorandum opinion and order, stating: "To determine . . . whether any conflict exists under *Martinez v. Ryan* [ ] and *Trevino v. Thaler* [ ], Lizcano is directed to supplement the application." ECF No. 5; *see Clark*, 850 F.3d at 783 (stating that the petitioner and his postconviction, direct appeal, and habeas counsel were "physically present in August 2013 when the state trial court considered whether a conflict of interest had arisen in the wake of *Trevino*" due to postconviction counsel's representation of petitioner in both state and federal habeas proceedings). Yet it was not until June 14, 2017, more than a year later, that new counsel filed the ex parte proposed supplemental petition.

10

Either way, the amended petition is untimely.  Thus, with the exception of the first claim in his amended petition, Lizcano's claims are time barred.

### A.   Lizcano is not entitled to equitable tolling under Supreme Court and Fifth Circuit precedent.

Lizcano has not alleged any facts that could support a finding that equitable tolling applies.  The Supreme Court has made clear that a federal habeas corpus petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)).  Equitable tolling is only available in cases presenting "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1999).  It is "not intended for those who sleep on their rights." *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012).  Equitable tolling principally applies where the plaintiff is "actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Flores v. Quarterman*, 467 F.3d 484, 487 (5th Cir. 2006) (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (citation omitted)).  But, a "garden variety claim of excusable neglect" does not support equitable tolling.  *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (citing *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).

Moreover, "[i]n order for equitable tolling to apply, the applicant must diligently pursue his § 2254 relief." *Coleman*, 184 F.3d at 403.  "Where [petitioner] could have filed his claim properly with even a modicum of due diligence, we find no

compelling equities to justify tolling." *Rashidi*, 96 F.3d at 128; *see also In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006).  And the Petitioner bears the burden of proving that equitable tolling is justified.  *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000); *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Lizcano addresses neither the statute-of-limitations issue nor equitable tolling in his petition.  Given the lack of any explanation for his untimeliness, he has clearly failed to satisfy to above precedent.  Moreover, as shown above, Lizcano raised only one claim in his original federal petition that pertained to guilt-innocence—that trial counsel were ineffective for failing to pursue a competency hearing.  By contrast, his state habeas application raised five: trial counsel were ineffective for failing to pursue a competency hearing, 1 SHCR 26–35; his constitutional rights were violated because the trial court failed to sua sponte hold a competency hearing, and he was in fact incompetent to stand trial, *id.* at 36–40; he was denied a fair trial due to pre-trial publicity, *id.* at 41–50; and the hostile and prejudicial atmosphere in the courtroom deprived him of due process and a fair trial, *id.* at 50–58.  The first two of these claims are raised in the instant amended federal petition, *see* p.2, *supra*, whereas only the first was included in Lizcano's original federal petition.

Moreover, on direct appeal, Lizcano raised seventy-nine points of error, including six *Batson* claims, one of which pertained to venire member Howard, Appellant's Brief at 25–36; claims that the trial court erred in denying the defense's challenges for cause of nine jurors, *id.* at 36–58; a claim that the trial court erred in granting the State's challenge for cause of two jurors, *id.* at 59–60; a claim that the

12

jury was biased, *id.* at 60–62; and other guilt-innocence issues regarding witness testimony, diminished capacity, and the trial court's failure to instruct the jury on lesser-included offenses and self-defense, *id.* at 79–80, 84–85, 87–92. The instant amended petition raises a *Batson* claim pertaining to venire member Howard, albeit under the guise of ineffective assistance of counsel. ECF No. 57 at 41–56.

Thus, all of the claims Lizcano raises in his amended petition have been available to him since trial, and the first two and essentially the third were raised in prior state court proceedings. He has no excuse for presenting only one of these guilt-innocence claims in his original federal petition, particularly considering that his original federal habeas counsel litigated his state habeas claims. Counsel's negligence in failing to raise these claims in the original petition does not warrant equitable tolling. *Holland*, 560 U.S. at 656 ("The basic rationale for *Lawrence's* holding is that the mistakes of counsel are constructively attributable to the client, at least in the postconviction context.") (Alito, J., concurring); *Lawrence*, 549 U.S. at 336–37 (citing *Coleman v. Thompson*, 501 U.S. 722, 756–57 (1991)); *Cousin v. Lensing*, 310 F.3d 843, 848–49 (5th Cir. 2002) (attorney error is not a "rare and exceptional" circumstance that warrants equitable tolling); *cf. Coleman*, 501 U.S. at 754 ("In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation").

In short, given the above and the fact that Lizcano fails to provide any explanation for his failure to timely raise his guilt-innocence claims, he cannot show exceptional circumstances or that he acted with reasonable diligence in pursuing

13

relief.  Thus, with the exception of his first allegation, his remaining claims should be dismissed with prejudice as untimely.

### B.   The time-barred claims do not relate back to Lizcano's original petition.

A final issue is whether the time-barred claims relate back to Lizcano's timely petition.  Because all but one of the claims in Lizcano's original petition pertained to punishment, the issue here is whether any of the untimely claims in the amended petition relate back to Lizcano's claim that trial counsel were ineffective for failing to pursue a competency hearing.  They do not.

Federal Rule of Civil Procedure 15(c)(2) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  While Rule 15(c)(2) does apply to federal habeas corpus proceedings, the Supreme Court has rejected the argument that the "same conduct or transaction" refers to any claim that arises out of a habeas petitioner's trial, conviction, or sentence.  *Mayle v. Felix*, 545 U.S. 644, 656–69 (2005).  Under that erroneous interpretation, the AEDPA limitations period would have "slim significance" and, in essence, would be repealed.  *Id*. at 662–63. Instead, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Id*. at 659.  Further, "relation back" does not occur "when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."  *Id*. at 657 (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)).  And to "relate back," the initial petition

14

must apprise the respondent of the claim raised in the amended petition. *See Federal Deposit Ins. Corp. v. Conner*, 20 F.3d 1376, 1385–86 (5th Cir. 1994); *McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 864 (5th Cir. 1993).

In this case, claims three, four and five, *see* p.2, *supra*, clearly do not relate back, and the original petition, which raised none of these allegations, did not apprise the Director of these claims. Claim three is that trial counsel were ineffective for failing to properly litigate a *Batson* claim and related claims of ineffective assistance of habeas counsel. ECF No. 57 at 41–56. A *Batson* claim pertains to voir dire and has nothing to do with Lizcano's competency. The fact that this claim is raised in terms of ineffective assistance of counsel also does not mean it relates back because a petitioner "does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citations omitted); *see also United States v. Gonzales*, 592 F.3d 675, 680 (5th Cir. 2009) ("We agree with the approach adopted by our sister circuits. New claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision.").

In claim four, Lizcano alleges that the prosecution committed misconduct during the guilt phase by making improper arguments during final argument, trial counsel were ineffective for failing to object to these comments, and state habeas counsel was ineffective for failing raise as a claim for habeas relief trial counsel's

ineffectiveness.  ECF No. 57 at 56–63.  These claims involve events separate in both time and type because they pertain to final argument, not what occurred in any pre-trial or trial proceedings regarding Lizcano's competency, and claims regarding improper prosecutorial arguments are unrelated to competency.

Similarly, claim five, that Lizcano's conviction is unconstitutional due to the cumulative effect of trial counsel's inadequate representation and the trial court's denial of his due process rights, ECF No. 57 at 63–64, differs in both time and type. This allegation pertains to everything that occurred during trial, not just matters regarding Lizcano's competency, and a cumulative-error claim is clearly distinct from an ineffectiveness claim regarding competency.  Given the breadth of this claim, there is no common core of operative facts with Lizcano's distinct claim about counsel's failure to pursue a competency hearing.  In sum, claims three, four, and five do not "overlap with the claims in the original § 2254 petition" and, thus, do not relate back. *Figueredo-Quintero v. McCain*, 766 F. App'x 93, 97 (5th Cir. 2019) (unpublished).

The only claim that bears some relationship with Lizcano's allegation that trial counsel were ineffective for failing to pursue a competency hearing is claim two—that Lizcano's due process rights were violated because the trial court failed to sua sponte conduct a competency hearing.  ECF No. 57 at 24–41.  But there are clear distinctions between Lizcano's ineffectiveness and due-process claims.

First, the legal claims are clearly different—the former involves a Sixth Amendment ineffectiveness claim, the latter a claim of trial court error that invokes procedural due process.  "[An] amended complaint relates back if it asserts the *same*

16

*claim* 'set forth . . . in the original complaint." *United States v. Randall & Blake*, 817 F.2d 1188, 1191 (5th Cir. 1987) (emphasis added).

Second, Lizcano's timely claim that trial counsel were ineffective for failing to pursue a competency hearing involves events separate in time from his due-process claim. For instance, regarding the former claim, Lizcano states that trial counsel were deficient from the beginning of their representation because counsel did not conduct an investigation into Lizcano's background and cognitive functioning and failed to communicate with their mitigation investigator. He then states:

> During voir dire proceedings held in June 2007, trial counsel noticed that Mr. Lizcano was not able to assist in selecting a jury for his upcoming capital murder trial. On September 17, 2007, nearly two years after they began representing Mr. Lizcano, trial counsel filed a motion for a competency examination and trial.

ECF No. 57 at 7–8; *see also* ECF No. 1 at 12–14. Thus, Lizcano complains about counsel's investigation into Lizcano's mental state from the beginning of their representation, and he then points to voir dire proceedings where counsel allegedly noticed that Lizcano's competency might be an issue. Clearly, the trial court had no involvement in counsel's pre-trial investigation into this issue, and Lizcano complained in his original petition that "trial counsel failed to move for a competency hearing until the middle of voir dire." ECF No. 1 at 80. Lizcano, therefore, suggests counsel were or should have been aware of this issue before ever notifying the court.

Moreover, Lizcano's procedural *Pate* claim is premised on a hearing by the trial court on September 25, 2007. *Id.* at 2, 9, 24–25, 28. At this hearing, the judge said he had received a report from Dr. Gilbert Martinez who determined Lizcano was

17

incompetent, and although the judge previously determined on September 21, 2007, that the evidence before the court was not sufficient to proceed with a competency hearing, the judge stated that he had changed his mind based on this report.  40 RR 4; 39 RR 5–6.  Thus, Lizcano's ineffectiveness claim is premised on multiple events and communications occurring from the beginning of counsel's representation up until September 25, 2007, whereas his *Pate* claim turns on the trial court failure to conduct a competency hearing *after* concluding on September 25th that the evidence before it was sufficient to proceed.   Thus, the events are separate in time. *See, e.g., United States v. Roe*, 913 F.3d 1285, 1299–300 (10th Cir. 2019) (holding that petitioner's claim that counsel was ineffective for failing to consult with petitioner regarding whether to file an appeal did not relate back to petitioner's claim that counsel failed to file an appeal where the "the failure-to-consult claim . . . relies on an entirely different set of facts that span a time frame over the entire course of trial counsel's representation" unlike the ministerial task of filing an appeal).

Third, these claims involve events separate in type.  Lizcano's ineffectiveness claim is not that counsel never pursued a competency hearing, but that counsel withdrew their motion for a competency hearing without investigating all the facts and data from the experts.  *See* ECF No. 1 at 80–83; ECF No. 57 at 13–20.  At the September 25th hearing, the trial court stated that, after receiving Dr. Martinez's report, the evidence was sufficient to move forward with a competency trial.  40 RR 4.   Defense counsel then acknowledged that Dr. William Flynn, the court's independent expert, found Lizcano to be competent.  40 RR 4–5.  Defense counsel

18

stated: "We had a discussion with our experts and our client here and have determined that at this point we feel that he is competent and do wish to abandon our motion for a competency hearing at this time." 40 RR 5. As discussed in detail below, trial counsel had several strategic reasons for not pursuing a competency hearing, one being that they were skeptical of Dr. Martinez's opinion. Therefore, the precipitating event leading to Lizcano's ineffectiveness claim was a discussion counsel had with Lizcano and their own experts, to which the trial court was not privy, as well as the finding from Dr. Flynn.   On the other hand, the event leading to the trial court's decision that the evidence was sufficient to move forward with a competency hearing was, by the court's own admission, only receiving Dr. Martinez's report. 40 RR 4. Although the court had heard counsel's concerns and decided to appoint an independent expert to examine Lizcano, 38 RR 18–25, nothing before September 25th convinced the court that a hearing was warranted, contrary to Lizcano's suggestion otherwise. ECF No. 57 at 28.

Thus, Lizcano's ineffectiveness claim hinges on discussions among the defense team and with Lizcano, as well as counsel's beliefs about the strength of their incompetency claim and trial strategy, that occurred over an extended period of time and did not involve the trial court. His *Pate* claim involves a narrower window and depends solely on one expert report. Consequently, these claims differ in time and type, apart from the separate legal theories underlying the claims. *See United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (holding that a claim "that attempts to

introduce a new legal theory based on facts different from those underlying the timely claims" does not relate back) (internal citations omitted).

Finally, Lizcano's claim that appellate counsel was ineffective for failing to raise a *Pate* claim on appeal surely differs in time and type because that matter pertains to what occurred on appeal well after trial. *See, e.g., Milton v. Miller*, 812 F.3d 1252, 1264 (10th Cir. 2016) (holding habeas petitioner's IATC claim "ha[d] a dramatically different factual predicate" than his original IAAC claim and therefore could not relate back). For these reasons, claims two, three, four, and five should be dismissed as untimely.

## II.   All But One of Lizcano's Claims Are Procedurally Defaulted.

With the exception of claim one, all of Lizcano's allegations are likewise procedurally defaulted. Federal review of a habeas claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). The requirements are satisfied where the court clearly indicates that its dismissal of a particular claim rests upon a state ground that bars relief, and that bar is strictly and regularly followed by the state courts. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001). The application of an adequate and independent state procedural bar must be honored even if the state court has, in the alternative, reached the merits of the claim. *Harris*, 489 U.S. at 264 n.10; *Busby v. Dretke,* 359 F.3d 708, 718 (5th Cir. 2004); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

Here, Lizcano raised a portion of claim two, that the trial court failed to sua sponte conduct a competency hearing pursuant to *Pate,* in his original state habeas application.  1 SHCR 36–40.[4]  The state court found the claim to be procedurally barred because it could have been raised on direct appeal but was not.  8 SHCR 2126–27.  The CCA bars all record-based claims not raised on direct appeal as procedurally defaulted.  *Ex parte Jimenez*, 364 S.W.3d 866, 880 (Tex. Crim. App. 2012); *Ex parte Rojas,* 981 S.W.2d 690, 691 (Tex. Crim. App. 1998); *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1998).  The Fifth Circuit has held that this ruling—first announced in *Gardner*—constitutes an adequate state ground barring federal habeas relief.  *Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007); *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005).

All of Lizcano's remaining claims—again, with the exception of his first allegation—are defaulted because Lizcano raised them in his subsequent habeas application dismissed for abuse of the writ.  *See* SHCR2 167–91 (*Pate* and related claims of ineffective assistance of appellate and state habeas counsel and Lizcano's claim that appellate counsel labored under a conflict of interest), 247–67 (claim that trial counsel were ineffective for failing to properly litigate the *Batson* issue and related claim of ineffective assistance of habeas counsel), 279–99 (claim that the prosecution committed misconduct during final argument of the guilt-innocence phase and related claims of ineffective assistance of trial, appellate, and state habeas

---

[4]    Lizcano also raised this claim in his subsequent habeas application dismissed for abuse of the writ.  SHCR2 167–91; *Ex parte Lizcano*, 2020 WL 5568625, at *1–*2.  Thus, for the reasons addressed below, it is defaulted on two grounds.

counsel), 302 (cumulative-error claim).  They were not raised in his original state habeas application.  *See* 1 SHCR 26–92.  The Fifth Circuit has repeatedly held that Texas's abuse-of-the-writ doctrine is an adequate and independent state ground barring federal habeas review of claims raised in the abusive application.  *Garza v. Stephens*, 738 F.3d 669, 675 (5th Cir. 2013); *Balentine v. Thaler*, 626 F.3d 842, 857 (5th Cir. 2010); *Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008).

Where a state court has explicitly relied on a procedural bar, a state prisoner may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice, or that the federal court's failure to consider the claim will result in a miscarriage of justice.  *Coleman*, 501 U.S. at 750.  Failure to raise a claim in an initial state habeas corpus application may not be excused for cause unless the claim was not "reasonably available" at the time of the prior petition.  *Fearance v. Scott*, 56 F.3d 633, 636 (5th Cir. 1995).  And a miscarriage of justice in this context means that the petitioner is actually innocent of the crime of which he was convicted. *Sawyer v. Whitley*, 505 U.S. 333, 339–40, 349 (1992).

In his petition, Lizcano issues a "Statement Regarding Procedural Bars," in which he appears to argue that all defaults can be excused under *Martinez* and *Trevino*.  ECF No. 57 at 23–24.  This is incorrect.  The Fifth Circuit has refused to extend the *Martinez* exception beyond the boundaries explicitly set by the Supreme Court in that case.  In other words, the exception applies only to Lizcano's IATC claims.  *See Murphy v. Davis*, 732 F. App'x 249, 257 (5th Cir. 2018) (unpublished); *Reed v. Stephens,* 739 F.3d 753, 778 n.16 (5th Cir. 2014); *In re Sepulvado,* 707 F.3d

550, 554 & n.8 (5th Cir. 2013).   The Supreme Court also limited its holding in *Martinez* by declining to extend it to claims of ineffective assistance of appellate counsel.   *Davila v. Davis*, 137 S. Ct. 2058, 2063–70 (2016).

Thus, regarding the *Pate,* prosecutorial-misconduct, IAAC, and cumulative-error claims, Lizcano's burden is higher.   He must demonstrate "cause and prejudice" to overcome the bar or show a fundamental miscarriage of justice.   *Coleman*, 501 U.S. at 750.   "Cause" requires Lizcano to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   A factor is only considered external "if it cannot fairly be attributed to the prisoner."   *Davila*, 137 S. Ct. at 2065.

Lizcano recognizes that the state court applied a procedural default to his *Pate* claim after he filed his original habeas application.   ECF No. 57 at 39.   He then appears to assert that he can overcome his default by demonstrating IAAC as cause. *Id.* at 39–40.   As the Director understands his argument, he attempts to distinguish *Davila* from the instant case to show that *Martinez* extends to his circumstances.   *Id.* at 40.   Upon making this attempted distinction, he states:

> The claim at issue here is different, as Mr. Lizcano's trial counsel could not have raised Mr. Lizcano's *Pate* claim at any point during trial; the trial court had a duty to act on its own motion.   Furthermore, direct appeal counsel's conflict uniquely warrants application of the *Martinez* exception to cause and prejudice . . .

*Id.* at 40.   His argument is incorrect.   In *Davila*, the Court held that the *Martinez* equitable exception did not apply to a freestanding but defaulted IAAC claim. 137 S. Ct. at 2063–70.   *Davila* did not address whether—and certainly did not hold

23

that—the *Martinez* exception can excuse an IAAC claim that is, in turn, *offered to excuse a defaulted trial-court error claim* like *Pate*. Under that logic, *Martinez* could potentially excuse by repeated extension any defaulted constitutional claim, not just IATC. The Supreme Court has never held that *Martinez* can be applied in this manner. Thus, regarding the default of the *Pate* claim, the issue Lizcano actually raises is whether the *Martinez* exception applies to it, not IAAC. *Martinez* does not. And under *Davila*, it likewise does not apply to Lizcano's freestanding IAAC claims, despite his arguments to the contrary.

Because it appears Lizcano is arguing IAAC as cause to overcome his defaulted *Pate* claim, ECF No. 57 at 30–37, 39–40, the actual case on point is *Edwards v. Carpenter*, where the Supreme Court held that an IAAC claim asserted as cause to excuse a procedural default must itself be exhausted and can be procedurally barred. 529 U.S. 446, 451–54 (2000). As shown above, Lizcano first presented all of his IAAC claims in his abusive state habeas application. Therefore, these allegations are themselves defaulted and inadequate to demonstrate cause and prejudice to overcome the default of his *Pate* claim. *See Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir. 2009) ("[B]ecause Hatten did not exhaust his ineffective appellate counsel argument, it is procedurally barred from review in this court and cannot furnish the basis for cause and prejudice enabling federal review of the underlying unexhausted habeas claims."). Moreover, cause to excuse Lizcano's defaulted IAAC claims would only turn on state habeas counsel's failure to raise those claims in Lizcano's original habeas application, which is inadequate under *Carrier* and Fifth Circuit precedent.

24

*See also Adams v. Thaler*, 421 F. App'x 322, 331–32 (5th Cir. 2011) (where petitioner alleged IAAC as cause to overcome defaulted jury-instruction claims but failed to challenge appellate counsel's effectiveness in his original habeas application, "he cannot overcome the procedural default by claiming that his state habeas counsel was ineffective for failing to raise his claims") (unpublished); *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001) (holding that ineffective state habeas counsel did not excuse petitioner from exhausting various constitutional claims in state court).

In other words, whether Lizcano is raising IAAC as freestanding claims or cause to overcome the default of his *Pate* claim, these allegations are defaulted, and Lizcano has failed to show some objective external factor impeded habeas counsel's ability to raise those claims in Lizcano's original state habeas application.  Indeed, Lizcano himself faults state habeas counsel for not raising these claims.  ECF No. 57 at 37–39.  Likewise, Lizcano has failed to overcome the default of his prosecutorial-misconduct and cumulative-error claims because he also faults state habeas counsel for not raising them, *id.* at 62–64, which is insufficient under *Carrier* and Fifth Circuit precedent.  Nor does he demonstrate prejudice under *Coleman*, let alone that the failure to consider these claims will result in a fundamental miscarriage of justice, i.e. that he is actually innocent of murdering Officer Jackson.  Indeed, he does not make this argument in his petition; thus, it is waived.  *See Elizalde v. Dretke,* 362 F.3d 323, 328 n.3 (5th Cir. 2004); *Hughes v. Johnson*, 191 F.3d 607, 613 (5th Cir. 1999).  As such, these claims are defaulted.[5]

---

[5]     The only claims to which the *Martinez/Trevino* exception apply are that trial counsel were ineffective for failing to properly litigate the *Batson* issue and for failing to object to the

### III.  Lizcano's Claims of Ineffective Assistance of State Habeas Counsel Are Not Cognizable.

In his amended petition, Lizcano claims his state habeas counsel was ineffective for failing to raise claims two, three, four, and five in his original state habeas application.  ECF No. 57 at 37–39, 55–56, 63–64.  To the extent Lizcano is raising these as independent claims for relief rather than to excuse his procedural defaults, these are not cognizable grounds for federal habeas relief, including post-*Martinez* and *Trevino*.  28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Davila*, 137 S. Ct. at 2068 (recognizing that the Court has never held the Constitution guarantees a postconviction right to counsel); *Martinez*, 566 U.S. at 17 (recognizing that § 2254(i) still precludes a petitioner from relying on ineffective assistance of postconviction counsel as a ground for relief); *Stevens v. Epps,* 618 F.3d 489, 502 (5th Cir. 2010); *Haynes v. Quarterman*, 526 F.3d 189, 195 (5th Cir. 2008).

The Director also notes that these complaints are unfounded because the state habeas record consists of eight volumes totaling almost 3000 pages, 1 SHCR–8 SHCR, and Lizcano received a one-week evidentiary hearing in state court addressing his ineffectiveness claims, including those involving intellectual disability.  *See* Volumes 4–8 of the Reporter's Record from the State Court Evidentiary Hearing.  This paved

---

prosecution's guilt-innocence argument.  *See* p.2, *supra*.  However, because these two claims are unquestionably time barred and do not relate back in any way to Lizcano's original petition, a discussion of the merits under *Martinez*, 566 U.S. at 14, is unwarranted.

the way for Lizcano eventually receiving habeas relief and having his death sentence commuted to life without parole.   Lizcano was well represented on state habeas review and presented abundant evidence to the trial court to make his case.   Thus, even if this Court could review these claims, they would lack merit.

## IV.   The State Court's Denial of Lizcano's Claim That Trial Counsel Were Ineffective for Failing to Pursue a Competency Hearing Is Not Unreasonable.

Lizcano claims that trial counsel were ineffective for withdrawing their motion for a competency hearing and not pursuing it further.   He argues that counsel made this decision based solely on Dr. Flynn's conclusion that Lizcano was competent without reviewing Dr. Flynn's report.   Had they done so, counsel would have found errors in the report and flaws in Dr. Flynn's testing procedures, which presumably could have been used to impeach his finding that Lizcano was competent to stand trial or force him to retract his finding altogether.   He alleges that this issue combined with the additional evidence available to counsel showed he was incompetent to stand trial.   Thus, he claims counsel acted unreasonably in withdrawing the motion and that he was prejudiced as a result.   ECF No. 57 at 8–16.   He further argues that the state court's decision rejecting this claim is unreasonable under *Strickland v. Washington*, 466 U.S. 688 (1984).   *Id.* at 16–21.

Lizcano's claim fails for several reasons but primarily because it misconstrues counsel's actions and ignores counsel's legitimate strategic decisions based on the totality of the facts and circumstances, which the state court thoroughly addressed in rejecting his claim.   Lizcano also fails to show that the state court's decision that he

27

was not prejudiced by counsel's actions is unreasonable.   Consequently, Lizcano is not entitled to habeas relief under 28 U.S.C. § 2254(d).

### A.   Standard of review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 97 (2011).   A state court's adjudication of a constitutional claim requires review under § 2254(d).   *Id.* at 98–99.   This section "imposes a highly deferential standard of review for evaluating state court rulings and demands that state court decisions be given the benefit of the doubt," *Hardy v. Cross*, 565 U.S. 65, 66 (2011) (per curiam) (quotation omitted), and "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under § 2254(d), relief may not be granted unless the state court adjudication (1) "'was contrary to' federal law then clearly established in the holdings of" the Supreme Court, (2) "'involved an unreasonable application of' such law," or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court."   *Richter*, 562 U.S. at 100 (quoting § 2254(d)(1)–(2)) (citing *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A state court decision is contrary to clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent yet reaches an opposite result. *(Terry) Williams*, 529 U.S. at 405–06.   A state court unreasonably applies clearly established federal law if it correctly

identifies the governing Supreme Court precedent but unreasonably applies it to the facts of a particular case. *Id*. at 407–09. To analyze unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision[] and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Richter*, 562 U.S. at 102. Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree" on the correctness of the state court's decision. *Id.* at 101 (quotation omitted).

Further, it is the state court's "ultimate decision" that is to be tested for unreasonableness and not every jot of its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). Indeed, state courts are presumed to "know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). And, even if the state court's decision lacks reasoning, § 2254(d) applies and the petitioner must overcome it. *Richter*, 562 U.S. at 98.

AEDPA also provides that state court factual findings "shall be presumed to be correct" unless a petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1). "The presumption of [factual] correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

Moreover, Lizcano's claim that he was denied constitutionally effective assistance of counsel requires him to affirmatively prove both that (1) counsel rendered deficient performance, and (2) counsel's actions resulted in actual prejudice. *Strickland*, 466 U.S. at 687–88, 690.  Importantly, failure to prove either deficient performance or resultant prejudice will defeat an ineffectiveness claim, making it unnecessary to examine the other prong.  *Id.* at 687.

Regarding deficient performance, Lizcano must show that in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness," i.e., "prevailing professional norms."  *Id.* at 689–90; *see also Hinton v. Alabama*, 571 U.S. 263, 273 (2014) (per curiam) (emphasizing that the "performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances") (citation omitted).  The Supreme Court has held that judicial scrutiny of counsel's performance "must be highly deferential," with every effort made to avoid "the distorting effect of hindsight." *Strickland*, 466 U.S. 689–90; *Richter*, 562 U.S. at 105 ("It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'").  Thus, there is a "strong presumption" that the alleged deficiency "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even if Lizcano can establish deficient performance, he must still affirmatively prove prejudice, which requires him to show a reasonable probability that but for counsel's deficiencies, "the result of the proceeding would have been different." *Id.* at 687, 694.  A "reasonable probability" is one sufficient to undermine confidence in the

outcome. *Id.* As explained by the Supreme Court, the question in conducting *Strickland*'s prejudice analysis "is *not* whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel [had] acted differently." *Richter*, 562 U.S. at 111 (emphasis added and citations omitted). Rather, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112 (citation omitted).

Finally, relief is not warranted even if this Court believes Lizcano has satisfied *Strickland*. Instead, Lizcano is entitled to relief only if this Court concludes that the state court's determination that Lizcano did not satisfy *Strickland* is objectively unreasonable under § 2254(d). *Richter*, 562 U.S. at 101. Thus, under the AEDPA, a federal court's review of a state court's resolution of an IATC claim is "doubly deferential." *Pinholster*, 563 U.S. at 190.

### B. The state court findings are not unreasonable.

On state habeas review, the trial court addressed this claim and issued extensive, reasonable findings rejecting it. After setting out the competency standard under Texas law, 8 SHCR 2094–95, the trial court addressed the factual background to this claim as follows:

> The Court finds that on September 14, 2007, [Lizcano's] trial counsel filed a motion suggesting that [Lizcano] was incompetent to stand trial and requesting an examination of him. [CR 110–11; 1 SHCR 101–02]. Attached to the motion was an affidavit from one of [Lizcano's] attorneys, [co-counsel] Juan Carlos Sanchez, stating his belief that [Lizcano] was not competent to stand trial based on [Lizcano's] inability to provide input regarding the defense team's strategy during individual voir dire or their use of peremptory strikes. [CR 112–13; 1 SHCR 103–04]. Also attached to the motion was a Neuropsychology Evaluation Summary from Dr. Antonio Puente, an expert who had evaluated

[Lizcano] for [intellectual disability]. [CR 114–15; 1 SHCR 105–06]. In the report, Dr. Puente concluded that [Lizcano's] neuropsychological test performances ranged from mildly impaired to normal and that his intellectual quotients were in the mild mental impairment range; however, Dr. Puente's report did not address [Lizcano's] competency to stand trial. [CR 114–15; 1 SHCR 105–06].

The Court finds that on September 17, 2007, the Court held a hearing on the motion and conducted an informal inquiry into [Lizcano's] competence. Mr. Sanchez reiterated the concerns he expressed in his affidavit. [38 RR 18–19]. [Lead counsel Brook Busbee] informed the Court that the issue of competence arose and was brought to the Court's attention upon the advice of her expert after she found a criminal case where a defendant with an IQ of 64 was found per se incompetent to stand trial. [38 RR 23–24; 4 EHRR 70]. The Court inquired whether they believed [Lizcano] was incompetent due to his alleged [intellectual disability], and Ms. Busbee agreed with that characterization of the issue. [38 RR 24–25]. The Court ruled that it would appoint a neutral expert to examine [Lizcano] for competence and advised the parties of its intention to empanel a jury for a competency trial on September 25, 2007. [38 RR 25–26].

The Court finds that on September 19, 2007, the Court appointed Dr. Toni McGarrahan as its neutral expert to conduct a competency examination of [Lizcano]. [4 EHRR 71, 127, 161, 220; 9 EHRR SX 2].

The Court finds that on September 20, 2007, Dr. McGarrahan examined [Lizcano] and found him competent to stand trial. She conveyed her findings to the Court orally via telephone. [4 EHRR 219]. Later that day, the Court discovered a potential conflict of interest between Dr. McGarrahan and the State's expert, Dr. Price. [4 EHRR 219–20]. In an abundance of caution, the Court appointed Dr. William Flynn as its neutral expert to replace Dr. McGarrahan and conduct a competency examination of [Lizcano]. [CR 132–33; 4 EHRR 71, 127, 161, 220–21].

The Court finds that on September 21, 2007, the Court inquired whether the defense wished to supplement its competency motion with any additional evidence. [39 RR 4]. Trial counsel indicated that she did have an additional report she intended to file, but it was not with her at that time, so she stated she would let the motion stand "as it is." [39 RR 4–5]. The Court requested to continue its informal inquiry by asking [Lizcano] some questions, but trial counsel objected to the Court doing so in the State's presence. [39 RR 5]. The Court then ruled that there

32

was insufficient basis to proceed with a competency trial.  [39 RR 5–6; 40 RR 4].

The Court finds that on September 24, 2007, Dr. Flynn examined [Lizcano] and found him competent to stand trial.  [CR 141–43; 40 RR 4–5; 4 EHRR 71].   Dr. Flynn found that [Lizcano] (1) was able to understand the proceedings in the courtroom and the possible consequences of penalties, legal defenses, and possible outcomes, (2) understood the role of key personnel in the courtroom, (3) understood the severity of the charges against him and his legal defenses, (4) was able to communicate with his counsel, and (5) had the capacity to plan legal strategy.  [CR 142–43].  In addition, Dr. Flynn found that [Lizcano] did not qualify for a diagnosis of [intellectual disability] because he did not have significant limitations in adaptive functioning.  [CR 142–43].

The Court finds that after the hearing on September 21, 2007, trial counsel tendered to the Court an additional letter from Dr. Gilbert Martinez in support of the competency motion.  [CR 139; 40 RR 4].  In the letter, Dr. Martinez stated his professional opinion that [Lizcano] "does not have sufficient present ability to consult with his attorneys with a reasonable degree of rational understanding, nor does he have a rational or a factual understanding of the proceedings against him."  [CR 139; 40 RR 4].  Dr. Martinez's opinion was based on a neuropsychological evaluation of [Lizcano] conducted on September 10, 2007.  [CR 139; 10 EHRR PX 3].  Prior to performing this evaluation, Dr. Martinez reviewed and relied on information contained in a neuropsychological evaluation by Dr. Antonio Puente and several mitigation reports prepared by Debbie Nathan.  [See 10 EHRR PX 3].

The Court finds that on September 25, 2007, the parties met with the Court in chambers to discuss how to proceed with the competency issue in light of the additional evidence tendered by [Lizcano].  During this time, Dr. Flynn called and orally reported his findings to the Court and the parties via speakerphone.  [40 RR 4–6; 4 EHRR 161].  His written report was sent to the Court via facsimile later that day.  [CR 141–43].

The Court finds that during the meeting in chambers, the Court advised defense counsel that if they proceeded with a competency trial and planned to offer the testimony of Dr. Martinez, they would have to turn over all the reports and data he relied on in making his conclusions, which would necessarily include Dr. Puente's evaluation and Nathan's mitigation reports.  [4 EHRR 89–90, 162–64].

The Court finds that following the meeting in chambers, the parties went into the courtroom and conducted proceedings on the record. The Court noted its previous ruling but stated that the additional evidence provided by the defense was sufficient to proceed with a competency trial if the defense wished to do so. [40 RR 4]. Ms. Busbee stated that after learning of Dr. Flynn's findings and conferring with both her client and her experts, the defense now believed that [Lizcano] was competent to stand trial and was withdrawing their request for a competency trial. [40 RR 4–6].

8 SHCR 2095–98.

In addressing deficient performance under *Strickland*, the court found that counsel withdrew their request based on many factors, including that counsel ultimately believed Lizcano was competent to stand trial. "Because the motion suggesting incompetency was based partly on co-counsel's assertions that [Lizcano] was incompetent, it was not unreasonable for them to withdraw the request when that opinion changed," and Lizcano "fails to cite any authority that counsel can be ineffective for failing to pursue a competency hearing despite her carefully considered opinion that her client is competent." 8 SHCR 2098.

The court then found that counsel exercised sound strategy in withdrawing their request for a hearing. Specifically: (1) Dr. Martinez told Busbee that his opinion "was based on his clinical observations rather than the Texas statutory competency examination and, as such, he did not feel comfortable testifying regarding [Lizcano's] competency"; (2) Busbee testified that the competency requirements in Texas are minimal, and she did not feel a competency trial would be successful; (3) Sanchez stated that withdrawing the request was a strategic decision because both Drs. Flynn and McGarrahan found Lizcano competent, Dr. Martinez's opinion was "shaky" since

34

it was based on his clinical observations, the defense did not believe a competency trial would be successful, and "it was too dangerous in the long run to reveal their data and mitigation information to the prosecution"; (4) Sanchez's characterization of Dr. Martinez's opinion as "shaky" was accurate because, during the Texas Rule of Criminal Evidence 705 hearing, Dr. Martinez said Lizcano's competency was "questionable"; (5) upon learning that Dr. Martinez was reluctant or unwilling to testify, it was reasonable for counsel to conclude a hearing would not be successful and withdraw the request; (6) even if Dr. Martinez would have testified, it was reasonable for counsel to forgo a competency trial to preclude the State from receiving all the data underlying their intellectual-disability case because the State would not have received this evidence until just before the defense's experts testified and, thus, would not have had "a two-month head start to review their entire defense and prepare cross-examination and/or rebuttal evidence"[6]; (7) there was no evidence Dr. Martinez would have been more persuasive than Dr. Flynn; (8) Dr. Flynn performed the statutorily mandated competency exam on Lizcano and found him competent, and nothing in Dr. Martinez's report "specifically controverted" these findings; and (9) Dr. Martinez was a retained expert and, thus, potentially biased, whereas Dr. Flynn was court-appointed and neutral; consequently, it is reasonably probable the jury would have found Dr. Flynn more credible. 8 SHCR 2098–100. The court also found no merit to Lizcano's claim that Dr. Flynn's opinion should be

---

[6]     In a footnote, the trial court also found: "Although this information was already in the possession of the State's expert, Dr. Price, the Court specifically prohibited Dr. Price from disclosing this information to the prosecutors until the Court gave him permission to do so." 8 SHCR 2099 n.5 (citing CR 90).

discounted because the exam was conducted via a translator, since competency exams are not complex and "[i]t is clear from Dr. Flynn's notes and report that [Lizcano] was able to understand and respond to his questions."  8 SHCR 2101.

Next, the court found that counsel were not deficient for not uncovering additional evidence of incompetency from Luis Lara, a protection officer with the Mexican consulate assigned to Lizcano's case, and Debbie Nathan, the defense's mitigation investigator.  Both submitted affidavits claiming Lizcano had trouble communicating with them, understanding legal concepts, and remembering information.  8 SHCR 2101–02.  But the court found these affidavits not credible because both Lara and Nathan had access to defense counsel during trial and the opportunity to relay this information, but they waited until habeas review to do so and provided no explanation for the delay.  8 SHCR 2102.  The court also found their evidence insufficient because Lara failed to explain which legal concepts Lizcano did not grasp, and Nathan only complained that Lizcano "could not tell her what happened in the voir dire phase of the trial and that he did not remember which questions his attorneys asked in voir dire."  *Id.*  "Competency has never been defined in terms of a defendant's ability to fully comprehend the process of jury selection in a capital trial" and a limited understanding of voir dire proceedings does not mean Lizcano was incompetent.  *Id.*  The court also found the information in Nathan's affidavit to be cumulative of information in Sanchez's affidavit, which was attached to the competency motion.  *Id.*  Further, the court found that trial counsel "would have known better than anyone whether [Lizcano] was capable of assisting in his

36

defense and understanding the proceedings against him" and "had a front row seat from which to assess [Lizcano's] competency themselves and who heard the opinions of two experts regarding [Lizcano's] competency."  8 SHCR 2103 (citing *Medina v. California*, 505 U.S. 437, 450 (1992) (stating that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense")).  Thus, counsel "reasonably could have determined that the accounts of Mr. Lara and Ms. Nathan would not have been materially helpful."  *Id.*

Lastly, the court found that Lizcano failed to demonstrate any prejudice. Specifically, (1) "there was no evidence demonstrating that [Lizcano] did not understand the proceedings or could not rationally confer with his counsel," and counsel's statements on the record and Dr. Flynn's findings show the opposite; (2) even had counsel not withdrawn their motion, it is not reasonably likely Lizcano would have been found incompetent because Dr. Flynn found Lizcano competent, and, despite his letter to the court, Dr. Martinez told counsel he was uncomfortable testifying and, thus, the defense had no evidence to rebut Dr. Flynn; (3) even had Dr. Martinez testified, it was still unlikely the jury would have found Lizcano incompetent because Dr. Martinez was a retained and presumably biased witness, and his finding was based on a clinical evaluation of Lizcano's intellectual ability rather than the Texas statutory requirements for evaluating competency; and (4) given that "there was no evidence that [Lizcano] had a recent severe mental illness, was at least moderately [intellectually disabled], or had committed truly bizarre acts," Lizcano "did not have evidence sufficient to have triggered this Court's

sua sponte duty to hold a competency hearing, much less evidence that would have led a rational jury to have found him incompetent." 8 SHCR 2103–04. Thus, the court concluded that Lizcano "was not prejudiced by counsel's decision to withdraw the request for a competency trial because he has not shown there was a reasonable probability he would have been found incompetent to stand trial." 8 SHCR 2105. This decision is not objectively unreasonable given the record before the state court.

## C.   The state court reasonably denied Lizcano's ineffectiveness claim.

### 1.   The state court's finding that counsel were not deficient is reasonable given the record before the court, and Lizcano fails to demonstrate otherwise.

As shown, the State court provided many reasons why counsel were not deficient for withdrawing their competency motion. Lizcano fails to show that these findings are unreasonable because he mischaracterizes counsel's decision and omits crucial facts. The gist of Lizcano's complaint is that counsel believed Lizcano was incompetent but quickly changed their minds after Dr. Flynn orally stated that he had found Lizcano competent. For instance, Lizcano contends:

> [C]ounsel had presumably already weighed the potential benefits of a competency trial against the disclosure costs [of the data and evidence their experts collected] prior to filing their motion for a competency evaluation and strategically determined that the balance favored pursuing incompetency. *And again, the only factor that could have changed that calculation was counsel's receipt of Dr. Flynn's oral representation regarding Mr. Lizcano's competence.*

ECF No. 57 at 19 (emphasis added); *see also id.* at 20 (stating that "counsel decided to withdraw the motion for competency based solely on Dr. Flynn's unreliable opinion"). Lizcano claims counsel's decision was unreasonable because they did not

38

review Dr. Flynn's report and, had they done so and consulted with their experts, they would have found it contained errors in testing procedure and scoring.  Thus, Lizcano argues, counsel made a decision based on unreliable information without exploring further.  *Id.* at 12–14, 18–19.

The primary flaw with Lizcano's argument is that it distorts counsel's reasoning.  The state habeas hearing testimony from Busbee, Sanchez, and Dr. Martinez reveals that counsel decided to withdraw the competency motion for several reasons: (1) Dr. Flynn *and* Dr. McGarrahan found Lizcano competent; (2) they lacked confidence that Lizcano was incompetent and that a jury would reach that conclusion; (3) Dr. Martinez's opinion about Lizcano's competency was "shaky" at best and, thus, likely would not have countered Dr. Flynn's finding; and (4) a competency trial meant providing the State with all the facts and data their experts collected regarding their intellectual-disability and mitigation cases, and they did not want to give the State a head start in reviewing this evidence to cross-examine their experts. 4 EHRR 70–73, 78–91, 128, 159–66, 209–14; 6 EHRR 33, 81–92.  Of these, the latter two appeared to be the reasons most important to counsel in rendering their decision.

### a.   Counsel did not want to give the State an advantage by prematurely turning over their evidence.

The clear tenor of trial counsel's state habeas testimony was that they were quite wary of moving forward with a competency hearing given the risk of providing the State a strategic advantage on punishment-phase issues.  At the state habeas hearing, Busbee stated the following regarding why they withdrew the motion:

> We didn't do it because the judge told us that if we were going to assert competency and seek a hearing on that, he was going to make us give the State every bit of all of our mitigation evidence on [intellectual disability], which we did not want to do with an expert witness like Dr. Martinez, who hadn't done a real competency evaluation. Who said that he thought under Texas standards that was an iffy evaluation. And we have Dr. Flynn . . . . It was too much of a risk. We . . . couldn't say because he's so uncommunicative for a fact that he was incompetent because as I've previously stated the bar is pretty low in Texas for competency.
>
> So we met about it. We talked about it. . . . [A]ll of our evidence, all of our stuff on [intellectual disability], we weren't going to give it to them with this -- and give them weeks of time to try to find out ways to rebut it on a case we didn't think we could win and weren't [ ] comfortable advancing.

4 EHRR 89–90; *see also* 4 EHRR 128 ("[O]nce we learned we were going to have to give up everything, you know, a month or two in advance of our trial, we decided that there was little chance -- you know, we didn't have that much confidence in the fact that he was incompetent.").

> Sanchez was equally emphatic about this issue, stating:
>
> We had to weigh [ ] having the hearing versus the State's great desire to have the underlying data of our experts. I mean . . . this was going on way before trial. The State was always trying to find a way to get the underlying data that our experts had relied on . . . before forming their opinions. And we knew they wanted that because . . . that's one of the biggest tools in cross-examination. . . . We did everything under our power to legally not give them that until they were actually entitled to it.

4 EHRR 162–63. Realizing that they would have to give up all their data once Dr. Martinez took the stand in a competency trial, thereby giving the State a future advantage in crossing their experts, "we made that strategic decision to withdraw it *because there was too much danger in the long run during the trial.*" 4 EHRR 163–64

(emphasis added).  Sanchez opined that that it is always better if the defense can limit the amount of time the State has to review and analyze the defense's evidence. 4 EHRR 164–65.  Indeed, he asserted:

> I know some of the people say, well, you're going to have to give it up anyways.  But I've always found that the more time that the State has to look over an expert's data and what he relied on, the better cross-examination they can make, and we were trying to keep that from happening.  So we thought that was more important at the time.

4 EHRR 210.

What is evident is that, regardless of Dr. Flynn's opinion, trial counsel believed they risked giving the State a strategic advantage by turning over their data well in advance of litigating the punishment issues.  As shown, Sanchez said this was too dangerous in the long run even if Dr. Martinez took the stand to testify that Lizcano was incompetent.  Thus, it appears trial counsel ultimately did not want to take this chance despite what any of the experts thought about Lizcano's competency.  But the combination of that factor with Dr. Flynn's opinion and Dr. Martinez's "shaky" conclusion led to counsel's decision, which was reasonable under the circumstances. Further, it was reasonable for counsel to decide that maximizing their chances for a favorable punishment verdict by hindering the State's eventual cross-examination of their experts was the proper course of action, particularly considering that counsel had evidence supporting their intellectual-disability claim.  The Fifth Circuit has held that a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Pape v. Thaler*, 645 F.3d 281,

291 (5th Cir. 2011) (internal quotations and citations omitted); *see also Richter*, 562 U.S. at 105 ("It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'"); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) (holding that "this Circuit is careful not to second guess legitimate strategic choices"). Considering the totality of the facts, counsel's decision to withdraw their competency motion was sound.

Lizcano attempts to downplay counsel's decision not to turn over their data because the State's expert, Dr. Price, already had this information, and Sanchez stated that he would have to turn over the data in two-weeks' time and, thus, any delay was brief.  ECF No. 57 at 19.  Regarding the former claim, as the state court found, 8 SHCR 2099 n.5, Dr. Price had the data, but the trial court ordered that "neither expert may disclose the underlying facts or data to the attorneys without prior judicial authorization."  CR 90.  The State, therefore, *did not* have access to it. Regarding the latter argument, Sanchez merely agreed that the time between when the defense filed the competency motion and the start of trial was roughly two weeks. 4 EHRR 164.  But this does not account for a likely delay in the start of the trial if a competency trial first took place.  Moreover, the defense did not turn over its data to the State until October 11, 12 and/or 15, 2007, at the earliest, per the Rule 705 hearings.  *See* 50 RR 16–21; 51 RR 12.  That was approximately one month after the defense filed its competency motion and after the start of the punishment phase, which began on October 9th.  48 RR 1.  At the state habeas hearing, Sanchez opined that, in his experience, giving the State even a few weeks extra time to review data

and reports can make a difference.  4 EHRR 164–65, 210.  Trial counsel's decision delayed that time by about a month or more and should not be second-guessed.

In sum, Lizcano's claim that counsel's decision turned exclusively on Dr. Flynn's opinion is not supported by the record.  Dr. Flynn's opinion was part of this calculus, but the data/evidence issue was, per trial counsel's testimony, more critical.  Even had counsel dissected Dr. Flynn's report and found errors or problems as Lizcano alleges, that would not have altered counsel's decision.  The state court's finding regarding counsel's strategy is not unreasonable.

### b.   Trial counsel's characterization of Dr. Martinez's opinion and their belief that a competency trial would not succeed is supported by the hearing testimony.

The second critical reason counsel did not want to pursue a competency hearing is that Dr. Martinez's opinion was hardly definitive, and, in fact, he conceded he did not perform a competency exam in compliance with Texas statutory requirements.  As such, trial counsel believed they would not prevail if the competency issue went before a jury.

Busbee testified that she pursued competency not because she personally thought Lizcano was incompetent, but because she knew his IQ scores were low and she saw a footnote in a federal decision that said low IQ might render a defendant per se incompetent.  "I raised it because it's required ethically and legally for me if there's any question to raise it.  So I did."  4 EHRR 70.  Then, she asked Dr. Martinez for his opinion because he had a lot of interaction with Lizcano.  However, "he had not done an incompetency exam on the defendant.  He said he was uncomfortable

43

with saying he was incompetent."  4 EHRR 71; *see also* 4 EHRR 80–81, 90–91 (Busbee reiterating that Dr. Martinez had not done a competency evaluation as required under Texas law and that he "could not say under Texas law that [Lizcano] was not competent to stand trial").  Instead, Dr. Martinez's competency evaluation was based on his clinical evaluation of Lizcano.  4 EHRR 128.  Moreover, although Busbee talked to Dr. Flynn on the phone after the September 25th hearing and he backtracked on his finding that Lizcano was not intellectually disabled, Busbee stated Dr. Flynn maintained that Lizcano was competent.  4 EHRR 83–87.  Further, when asked if she considered having another expert evaluate Lizcano for competency, Busbee said: "No, my own experts were not enthusiastic about it.  And -- I didn't want to give them my evidence."  4 EHRR 91; *see also* 4 EHRR 128 (stating that the defense did not have confidence that Lizcano was incompetent); *Rompilla v. Beard*, 545 U.S. 374, 383 (2005) ("reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste"); *Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000) ("trial counsel was not deficient by not canvassing the field to find a more favorable defense expert").

Sanchez testified that he became suspicious of Lizcano's competency during voir dire while explaining to him their procedures for striking potential jurors. 4 EHRR 159–60.  Sanchez knew that the court first appointed Dr. McGarrahan to assess Lizcano for competency and that Dr. McGarrahan had found Lizcano competent.  4 EHRR 161–62.  But there was a potential conflict with Dr. McGarrahan working with the State's expert, Dr. Price, so the court appointed Dr. Flynn.  *Id.*  Like

44

Busbee, Sanchez said he did not see Dr. Flynn's report but, along with the trial court and the State, heard his finding over the phone that Lizcano was competent.  4 EHRR 84, 161.  Sanchez testified:

> [A]fter we knew that Toni McGarrahan had found [Lizcano] competent, after we knew that Dr. Flynn had found him competent, and after we talked to Dr. Martinez, who in my opinion was kind of shaky as to his opinion of his competency, but he thought he could give it in a clinical way, we decided that . . . the State could call two witnesses that the Court had appointed to say he was competent versus our one witness that was kind of iffy, I thought.  And then there was a good a chance we may not win on that issue.

4 EHRR 163.  After weighing these factors with giving up their data to the State so far in advance of trial, the decision was made to withdraw the motion.  4 EHRR 164; *see also* 4 EHRR 209–10 (Sanchez agreeing with the State that Dr. McGarrahan's and Dr. Flynn's findings, Dr. Martinez's uncertain opinion, and turning over Dr. Martinez's data were the reasons they decided to withdraw the competency motion).  Sanchez also testified that Dr. Martinez told him that a competency decision per the statutorily mandated questions would be a "close call."  4 EHRR 213–14.

Trial counsel's concerns about Dr. Martinez were supported by Dr. Martinez's testimony at the state habeas hearing.  Dr. Martinez first testified that he evaluated Lizcano for competency and concluded that he was incompetent to stand trial. 6 EHRR 12–13.  He stated he did not recall telling anyone on the defense team that he was not comfortable testifying about competency, and he did not recall telling Busbee he was not confident in the results of his examination.  6 EHRR 14.  He then said that he was completely confident in the results of his competency examination,

he felt comfortable testifying about competency, and he would have testified about Lizcano's competency had he been asked.  6 EHRR 14–16.

But on cross-examination by the State, Dr. Martinez's assessment was shown to be dubious at best.  He said he advised Busbee that he was not a forensic psychologist and lacks working knowledge of forensic issues.  6 EHRR 33.  Prior to Lizcano's trial, his work was mostly clinical, and he had conducted evaluations on only five to six defendants and testified just twice in criminal trials.  6 EHRR 34–36; *see also* 6 EHRR 79–80 (Dr. Martinez stating that, in his practice, he has evaluated many persons for competence in civil matters, but "[a]s far as competence to stand trial, I could probably count on one hand the number of times that . . . I've engaged in that.  Maybe a little bit more than that.  Maybe eight to ten times.").  Regarding Lizcano, he conceded that he "did not conduct an evaluation with the specific . . . legal requirements in mind at that time."  6 EHRR 81.  The State asked Dr. Martinez if he was familiar with the statutorily required factors to determine if Lizcano was competent under that definition.  He replied that he was not "thoroughly familiar with them," and he "did not consider specific statutes other than my working knowledge of what was required . . . for an assessment of competency."  6 EHRR 82.  Rather than using all of the factors in the statute, Dr. Martinez used his "working knowledge of those factors at the time."  6 EHRR 84–85.

Equally problematic, the State confronted Dr. Martinez about his Rule 705 hearing testimony at trial.  In a portion of this testimony, Dr. Martinez said: "I never labeled [Lizcano] as being incompetent, I just felt that he was going to have difficulty

with the material in court. . . . I told you that his competency was questionable."
6 EHRR 89; *see also* 55 RR 242 (Rule 705 hearing).   When the State asked
Dr. Martinez about this matter, he replied that he "was getting asked quite a bit
about the legal definition for competence, and I felt uncomfortable.  I felt like some of
that was outside of my area."  6 EHRR 90.  He stated he was not "well versed in legal
terminology and statutes and things like that," and when asked if Lizcano met the
legal standard, "my response to that was . . . I didn't do my assessment with those
legal standards -- using those legal standards at that time too."  *Id.*  Then the State
said: "So what I'm hearing you say today, Dr. Martinez, is that while there were
factors that perhaps caused you to question his competency, you did not in fact find
him incompetent to stand trial.  You have never actually rendered that professional
opinion."  He replied: "I was not able to render that professional opinion."  6 EHRR
90–91.   And although Dr. Martinez maintained his belief that Lizcano was
incompetent and would have been found incompetent under the proper legal inquiry,
he said he was speaking from a clinical perspective, and "I did not address the specific
requirements for competency under the Texas legal statute."  6 EHRR 90–92.

In sum, Dr. Martinez supported trial counsel's testimony.  Despite his letter to
the court, Dr. Martinez was not comfortable with his decision as a matter of state law
and had not even conducted the proper evaluation.   Had counsel pursued a
competency trial using Dr. Martinez, and had the State questioned him in the same
manner as it did at the habeas hearing, the State would have thoroughly discredited
his testimony that Lizcano was incompetent.  It is highly unlikely that a jury would

have believed him over the court's neutral expert, Dr. Flynn, who conducted the correct evaluation under state law.  And even had trial counsel impeached Dr. Flynn by pointing to alleged errors in his report, the burden was on the defense to prove incompetency, *Ex parte LaHood*, 401 S.W.3d 45, 54 (Tex. Crim. App. 2013), and the defense had no expert to refute his opinion, as the state court found.  Plus, the additional cost of placing Dr. Martinez on the stand was that the defense would have to immediately turn over its evidence to the State.  Under these circumstances, it was reasonable for counsel to forgo a competency trial.  *See Knight v. Florida Department of Corrections*, 936 F.3d 1322, 1340 (11th Cir. 2019) (finding no reason to doubt the state court's conclusion that counsel's decision not to call an equivocal expert in part to preserve a tactical advantage at closing "was well within the wide range of reasonably competent performance"), *cert. denied*, 141 S. Ct. 2774 (2020).

### c.   Lizcano's additional arguments fail to show that the state court's decision is unreasonable.

Lizcano provides additional arguments in his petition that are likewise unavailing.  First, his complaint about errors in Dr. Flynn's scoring and methodology, ECF No. 57 at 10–11, 18, is premised in part on a new affidavit from Dr. Antolin Llorente, who claims that Dr. Flynn scored part of the test incorrectly.  ECF No. 58 at A483–84.  Dr. Llorente testified at the state habeas hearing on two days, 6 EHRR 145–246; 8 EHRR 10–74, and while he criticized Dr. Flynn's use of the CAST-MR[7] test, he mentioned nothing about any scoring errors.  Dr. Llorente's new affidavit is barred under *Pinholster* where the Supreme Court held that "review under

---

[7]       Competence Assessment for Standing Trial for Defendants with Mental Retardation.

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 181 (emphasis added). Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.* at 185.

At any rate, Lizcano's and Dr. Llorente's complaints about scoring and methodology errors assume that Dr. Flynn's finding on competency was wrong, and that counsel would have reached that conclusion had they read and analyzed his report and, consequently, not withdrawn their motion.[8] But that argument disregards that counsel withdrew the motion because they did not want to turn over their data and that Dr. Martinez's opinion, which was necessary to establish a finding of incompetency, was dubious. Further, trial counsel had little reason to suspect that Dr. Flynn's conclusion was incorrect because (1) he was the trial court's neutral expert, (2) Dr. McGarrahan reached the same conclusion before Dr. Flynn assessed Lizcano, as Sanchez pointed out, (3) Dr. Flynn maintained his opinion that Lizcano was incompetent despite altering his opinion about Lizcano's intellectual disability, and (4) most of all, Busbee stated on the record that, after discussing the matter with Lizcano and their experts, the defense believed Lizcano was competent, 40 RR 5.

---

[8]    One of Lizcano's and Dr. Llorente's complaints is that Dr. Flynn used the CAST-MR to assess Lizcano for competency, which is designed for use on the intellectually disabled. However, Dr. Flynn found that Lizcano did not have adaptive deficits and, thus, was not intellectually disabled; consequently, they claim he used the wrong test. *See* ECF No. 57 at 10; ECF No. 58 at A359; 6 EHRR 186–88, 232–33; CR 142. It appears from Dr. Flynn's report that he used the CAST-MR based on all the information he received about Lizcano's low IQ scores. *See* CR 142. Regardless, according to Busbee, Dr. Flynn immediately backtracked on his intellectual-disability assessment, stating that he was not confident in his conclusion. 4 EHRR 85–87. And as this Court is aware, Lizcano was recently commuted to life without parole because the state court determined he is intellectually disabled under *Atkins* and *Moore*. Therefore, it cannot be said that Dr. Flynn administered the incorrect test, let alone that his conclusion about Lizcano's competency was wrong. And for the reasons stated, this matter has little bearing on whether trial counsel were ineffective.

*See Medina*, 505 U.S. at 450; *Colburn v. Cockrell*, 37 F. App'x 90, 2002 WL 1021891, at *5  (5th Cir. 2002) ("Because Colburn's relationship with his attorneys is central to the question of his competence to stand trial, his attorneys are in the best position to determine that he was competent.") (unpublished).  Given the totality of the facts and circumstances, it was not necessary for counsel to dissect Dr. Flynn's report for potential methodology and scoring errors to make an informed decision to withdraw the competency motion.

Lizcano also alleges that counsel failed to investigate and consult Lara and Nathan regarding their opinions of Lizcano's competency.  ECF No. 57 at 12, 14.  But as the state court found, Nathan was concerned about Lizcano's competency based only on conversations she had with Lizcano during voir dire, and she did not remember a specific conversation.  7 EHRR 76–77.  As the state court found, this is hardly significant evidence of incompetence.  And Sanchez testified that he thought they did talk to Nathan about the topic.  6 EHRR 166.  Regardless, what Lara and Nathan believed was immaterial.  The trial court appointed an expert—in truth, two experts—to make this determination, who found Lizcano competent.  Trial counsel also believed Lizcano was competent.  And Lara's and Nathan's beliefs have no bearing on the issues that ultimately led to trial counsel's decision to withdraw the motion, namely having to turn over their data and Dr. Martinez's uncertain opinion.

Lizcano also claims that the state court's adjudication of this claim is unreasonable because the state court utilized the wrong standard.  Lizcano states that *Strickland* "calls for an objective assessment of counsel's representation" and

"not whether Mr. Lizcano's counsel subjectively believed their client was competent."

ECF No. 57 at 17.  This is a distortion of *Strickland* and a misrepresentation of the

issues here.  *Strickland's* holding that "the defendant must show that counsel's

representation fell below an objective standard of reasonableness,"  466 U.S. at 688,

has never meant that counsel's subjective belief on an issue cannot be taken into

account in assessing counsel's performance, and Lizcano cites no authority for this

proposition.  Indeed, in the summary of the *Strickland* holding, the above statement

about "an objective standard" is directly followed by these sentences:

> Judicial scrutiny of counsel's performance must be highly deferential,
> and a fair assessment of attorney performance requires that every effort
> be made to eliminate the distorting effects of hindsight, to reconstruct
> the circumstances of counsel's challenged conduct, *and to evaluate the
> conduct from counsel's perspective at the time*.  A court must indulge a
> strong presumption that counsel's conduct falls within the wide range of
> reasonable professional assistance.

466 U.S. at 669 (emphasis added); *see also id.* at 690 (holding that the reasonableness

of counsel's performance must be judged on the particular facts of the case "*viewed as

of the time of counsel's conduct*" and that the court "must [ ] determine whether, in

light of all the circumstances, the identified acts or omissions were outside the wide

range of professionally competent assistance") (emphasis added).  The problem with

Lizcano's claim is that he never correctly identifies "all the circumstances."  For

instance, he characterizes the circumstances as counsel withdrawing the motion

"even after receiving opinions from two defense experts supporting the motion, and

without reviewing Dr. Flynn's report or conducting other inquiries."  ECF No. 57 at

51

17.  Notably absent are counsel's legitimate concerns about releasing their data too early and the problems with Dr. Martinez's opinion about competency.

Moreover, *Strickland* held that the reasonableness of counsel's actions:

> may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. . . . And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

466 U.S. at 691.  Counsel stated on the record that after speaking to Lizcano and their experts, they did not feel he was incompetent.  Thus, an argument that the state court's decision cannot account for counsel's opinion after talking to their client, even if subjective, runs afoul of *Strickland* itself, not to mention *Medina*.

Lastly, Lizcano alleges that "the state court's 'deference to counsel's strategic decision' to withdraw the motion for a competency trial, 'despite the fact that counsel based this alleged choice on . . . an unreasonable investigation, was' itself 'objectively unreasonable.'"  ECF No. 57 at 18 (quoting *Wiggins v. Smith,* 539 U.S. 510, 528 (2003)).  But as Lizcano also recognizes, *id.*, the *Strickland* Court stated:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690–91; *see also Wiggins*, 539 U.S. at 521–22, 528.  To the extent counsel's investigation was limited because they did not read Dr. Flynn's

report or acquire evidence from Lara and Nathan, counsel made a reasonable decision that made this investigation unnecessary. As shown, (1) their strategic decision to withdraw the motion was based heavily on not supplying their data to the State, which had nothing to do with Dr. Flynn's report or other evidence, (2) it was the defense's burden to prove incompetency, and the defense had no expert who could say that, under Texas law, Lizcano was incompetent, and (3) trial counsel did not think Lizcano was incompetent when they withdrew their motion and did not believe a competency trial would succeed. Given the deference owed to counsel's judgments and considering all the circumstances, the state court's decision that trial counsel were not deficient is reasonable.

> ### 2. Lizcano fails to show that the state court's determination that he was not prejudiced by counsel's decision to withdraw the competency motion is unreasonable.

Lizcano argues that he was prejudiced by counsel's decision to withdraw the competency motion because counsel already had sufficient evidence of incompetency, such as Dr. Puente's report, the intellectual-disability testing, and Dr. Martinez's opinion. He claims that had counsel used that evidence, investigated the alleged errors in Dr. Flynn's report, and not dropped the competency issue, it is likely Lizcano would have been found incompetent. ECF No. 57 at 15–16, 20. He also argues that it is unreasonable to assume Dr. Flynn's report "had it not been retracted altogether or at least substantially revised [ ] would be found to be more credible than the substantial evidence counsel could have presented in a competency trial." *Id.* at 20. He then states: "Because counsel decided to withdraw the motion for competency

*based solely* on Dr. Flynn's unreliable opinion, it is unreasonable to assume that they would have maintained a belief that their client was competent had they actually reviewed Dr. Flynn's report." *Id.* at 20 (emphasis added). These allegations lack merit, and the state court's denial is not unreasonable.

First, Lizcano's argument is premised on speculation that Dr. Flynn's report contained errors in scoring and testing procedures/protocols and additional speculation that Dr. Flynn would have revised his opinion about Lizcano's competency had counsel questioned him about the matter. But he offers nothing to actually prove his claim. Instead, he criticizes the report based on his own observations of it and those from Dr. Llorente. *See* ECF No. 57 at 11–12. These critiques, by themselves, are insufficient to show that Dr. Flynn would have actually altered his opinion about Lizcano's competency. Indeed, as shown above, Busbee testified that Dr. Flynn may have changed his mind about Lizcano's adaptive deficits but maintained his belief about Lizcano's competency, and Dr. McGarrahan also found Lizcano competent. Importantly, Lizcano could have called Dr. Flynn to testify at the state habeas hearing and questioned him about the matter, but he did not. Instead, he relied on Dr. Llorente's testimony to point out these alleged flaws. 6 EHRR 186–88, 232–33. But criticism of the report does not mean Dr. Flynn was wrong, let alone that such criticism would have forced Dr. Flynn to revise his opinion. Had counsel questioned Dr. Flynn about this issue, he may have provided valid explanations for these supposed flaws, explained why they were not in fact errors, and/or reiterated his belief that Lizcano was competent. But this only illustrates that

Lizcano's argument relies on supposition rather than evidence of what Dr. Flynn may have stated had trial counsel questioned him about his report. *Cf. Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (holding that complaints of uncalled witnesses are not favored on federal habeas "because allegations of what a witness would have stated are largely speculative").

Second, Lizcano's claim that counsel based their decision to withdraw the competency motion solely on Dr. Flynn's "unreliable" opinion was addressed above. As shown, Dr. Flynn's opinion was only one of many reasons counsel chose to withdraw it. This argument is meritless.

Third, even assuming counsel could have impeached Dr. Flynn with the alleged errors in his report, counsel still had no reliable expert evidence that Lizcano was incompetent. Dr. Martinez failed to conduct a competency exam per the requirements of the Texas statute. And, as shown, he was not comfortable stating that Lizcano was incompetent under state law. Moreover, as the state court found, Dr. Martinez was a retained expert and not neutral, contrary to Dr. Flynn; thus, it is unlikely the jury would have believed Dr. Martinez over Dr. Flynn. Lizcano's speculation that the jury would have found Dr. Martinez more credible is inadequate to overcome the presumption of correctness afforded to the state court's findings of fact, § 2254(e)(1), particularly given the flaws with Dr. Martinez's opinion, as discussed previously.

Fourth, Lizcano's claim that counsel had sufficient evidence of incompetency is not supported by the record. For instance, Dr. Puente, per his habeas testimony, did not perform a competency evaluation on Lizcano and was only "vaguely" familiar

with the applicable Texas law regarding competency.  5 EHRR 46–47, 49, 97.  And Lara's and Nathan's opinions were suspect for the reasons discussed above.  In contrast, both Drs. McGarrahan and Flynn found Lizcano competent, and trial counsel did not believe that Lizcano was incompetent or that a competency trial would succeed.  Moreover, as the state court found, there was no evidence that Lizcano had a recent history of severe mental illness or committed bizarre acts.  Further, Lizcano's claim that counsel would have changed their minds had they read Dr. Flynn's report is speculative, disregards counsel's observations of Lizcano and their lack of faith in a competency trial, and sidesteps the many reasons why counsel believed withdrawing the motion was proper.

Lastly, throughout his petition, Lizcano repeatedly emphasizes his intellectual disability and states that Dr. Flynn's decision to re-evaluate his opinion that Lizcano was not intellectually disabled undermined his conclusion that Lizcano was not incompetent.[9]  ECF No. 57 at 9–10, 12, 14–15, 18, 20.  Indeed, on several occasions, Lizcano erroneously implies that Dr. Flynn's "re-evaluation" meant he was also uncertain about  Lizcano's competency.  *Id.* at 12 ("Unsurprisingly, in light of these multiple errors, Dr. Flynn admitted to Ms. Busbee in a telephone conversation . . . that his opinion was incomplete and lacked merit."), 14 ("Mr. Lizcano's trial counsel

---

[9]      In his petition, Lizcano asserts that the state court's finding "that there was 'no evidence' that Mr. Lizcano was even 'mildly' intellectually disabled is flatly contradicted by Dr. Puente's report."  ECF No. 57 at 20.  This is an incorrect assertion.  The state habeas court found that "there was no evidence that [Lizcano] had a recent severe mental illness, was at least *moderately* [intellectually disabled], or had committed truly bizarre acts." 8 SHCR 2104 (emphasis added).  The court recognized that experts found Lizcano "mildly" intellectually disabled.  8 SHCR 2095, 2104.

did not ever review the report or the testing sheets, even after Dr. Flynn admitted to Ms. Busbee that he had realized 'that he didn't have the full picture' and was willing to 're-evaluate.'"). However, Busbee clarified that when Dr. Flynn stated he needed to "re-evaluate" his opinion, he was speaking only about intellectual disability and not competence to stand trial, about which he was certain. 4 EHRR 85–87. At any rate, Lizcano's suggestion that evidence of intellectual disability demonstrates incompetence or undermines Dr. Flynn's conclusion is also unavailing. As the *Atkins* Court stated: "[Intellectually disabled] persons frequently know the difference between right and wrong and are competent to stand trial." 536 U.S. at 318; *see also Smith v. Ryan*, 813 F.3d 1175, 1195 (9th Cir. 2016) (recognizing that competence to stand trial is not inconsistent with intellectual disability); *Adams v. Haeberlin*, 404 F. App'x 11, 14 (6th Cir. 2010) ("a finding that a defendant is [intellectually disabled] is not dispositive as to a finding of competency to stand trial") (unpublished). Even if Dr. Flynn was incorrect regarding Lizcano's intellectual functioning, that has little bearing on his finding that Lizcano was competent, particularly considering that he formally tested Lizcano for incompetency but not intellectual disability. CR 141–43. Lizcano's intellectual disability is not sufficient proof of incompetence.

For these reasons, Lizcano has failed to show that the state court's finding that he did not suffer any prejudice is not objectively unreasonable. Therefore, this Court should reject Lizcano's claim and deny him habeas relief.

## CONCLUSION

For the foregoing reasons, the Director respectfully requests that this Court deny Lizcano's petition for federal habeas relief, deny his requests for an evidentiary hearing and discovery, ECF No. 57 at 65, and deny a COA. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining that the district court has the power to sua sponte deny a certificate of appealability without prior briefing and argument by counsel).

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division


/s/ Erich Dryden
*ERICH DRYDEN
Assistant Attorney General
State Bar No. 24008786
Erich.Dryden@oag.texas.gov

*Attorney-in-Charge

P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
(512) 936-1400
(512) 320-8132 (Fax)

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer has been served electronically to Debra McComas, Stephanie Sivinski, and Shawn Nolan on July 6, 2021.

/s/ Erich Dryden
ERICH DRYDEN
Assistant Attorney General

59